UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DARRON ROBERTS,

                Petitioner,

     -against-                               **ORDER**
                                                    11-CV-4404 (SJF)

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------------------------------X

FEUERSTEIN, J.

      Darron Roberts ("petitioner") seeks a writ of habeas corpus pursuant to a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (the "Petition") [Docket Entry No. 1]. For the reasons that follow, the Petition is denied.

I.     Background[1]

      In February 2009, following a tip from a confidential informant ("CI"), a joint investigation was undertaken by the Drug Enforcement Administration, the Nassau County Police Department, and the Hempstead Village Police Department into the narcotics distribution activities of petitioner. (Opp., Ex. A (Presentence Investigation Report ("PSR")), 3). On February 25, 2009, petitioner sold 17.633 grams of cocaine base to a CI in Uniondale, New York. (*Id.*). On March 10, 2009, petitioner sold 16.953 grams of cocaine base, 10.234 grams of cocaine, and 2.546 grams of marijuana to a CI in Freeport, New York. (*Id.*). On March 19, 2009, petitioner sold 19.306 grams of cocaine base, and 5.386 grams of cocaine to a CI in Hempstead, New York. (*Id.*). On June 5, 2009, petitioner was arrested while in the process of

---

[1]     The facts are taken from the Petition, the government's memorandum in opposition the Petition (the "Opposition") [Docket Entry No. 5] and the exhibits attached thereto (cited herein as "Opp., Ex. _"), and my review of the record.

1

distributing drugs to a CI in Freeport, New York, and a search warrant was executed at petitioner's home the next day, and charged with possession with intent to distribute 3.855 grams of cocaine base, 12.672 grams of cocaine, and 29.570 grams of marijuana. (*Id.* at 3-4). The quantities of narcotics obtained from defendant during these sales and the execution of the search warrant totaled 57.747 grams of cocaine base, 28.292 grams of cocaine, and 32.116 grams of marijuana. (*Id.* at 4).

On July 2, 2009, petitioner was indicted in the United States District Court, Eastern District of New York, on four (4) counts (the "Indictment"), charging that: (1) on February 25, 2009, petitioner distributed and possessed with intent to distribute five (5) grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 3551 *et seq.*; (2) on March 10, 2009, petitioner distributed and possessed with intent to distribute five (5) grams or more of cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C), (b)(1)(D), and 18 U.S.C. § 3551 *et seq.*; (3) on March 19, 2009, petitioner distributed and possessed with intent to distribute five (5) grams or more of cocaine base and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C), and 18 U.S.C. § 3551 *et seq.*; and (4) on June 5, 2009, petitioner possessed with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D), and 18 U.S.C. § 3551 *et seq.* (Indictment, *United States v. Roberts*, 09-cr-439 (E.D.N.Y. July 2, 2009), ECF. No. 11).

On February 17, 2010, petitioner pleaded guilty to count two (2) of the Indictment, which charged petitioner in connection with the March 10, 2009 sale of cocaine base, cocaine, and marijuana. (PSR, at 3). As indicated in the plea agreement signed by petitioner on February 17, 2010 (the "Plea Agreement"), the count to which petitioner pleaded guilty carried a maximum

sentence of forty (40) years imprisonment, a mandatory minimum sentence of five (5) years imprisonment, a maximum period of supervised release of life, a maximum fine of two million dollars ($2,000,000.00), and a mandatory one hundred dollar ($100.00) special assessment. (Opp., Ex. C (Plea Agreement), at 1-2). Based on the likely adjusted offense level under the United States Sentencing Guidelines (the "Guidelines") of twenty-seven (27),[2] the Plea Agreement set the range of imprisonment at one hundred twenty (120) to one hundred fifty (150) months, assuming that the defendant would be sentenced within Criminal History Category V. (*Id.* at 2-3). Petitioner specifically agreed "not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months or below" (the "2255 Waiver"). (*Id.*, at 3).

On June 3, 2010, the United States Probation Department submitted its presentence investigation report ("PSR") in connection with petitioner's upcoming sentencing.[3] (PSR, at 1). The PSR concluded that while petitioner only pleaded guilty to the count charging him with the sale of drugs on March 10, 2009, the drugs sold by petitioner on February 25, 2009 and March 19, 2009, as well as the drugs he possessed with intent to sell on June 5, 2009, were considered relevant conduct under the Guidelines. (*Id.* ¶ 3). Accordingly, the PSR concluded that petitioner was accountable for 57.747 grams of cocaine base, 28.292 grams of cocaine, and 32.116 grams of marijuana. (*Id.* ¶ 4). The PSR recommended that the base offense level of thirty-two (32) established by Guideline 2D1.1 be reduced by two (2) levels "since the offenses involved

---

[2] The level twenty-seven (27) was predicated on a base offense level of thirty (30), minus two (2) levels for acceptance of responsibility, and an additional one (1) level reduction if the petitioner entered his plea before March 1, 2010. (Plea Agreement, at 2-3).

[3] Petitioner's sentencing was initially scheduled for July 15, 2010, but was subsequently adjourned to July 26, 2010 upon request by petitioner's counsel. (*United States v. Roberts*, 09-cr-439, ECF No. 28).

3

cocaine base and another drug," and another three (3) level downward adjustment for acceptance of responsibility. (*Id.* ¶¶ 9, 15). Consequently, the PSR assigned petitioner a base Guidelines score of twenty-seven (27). (*Id.* ¶ 16).

On July 26, 2010, a sentencing hearing was held before this Court, during which petitioner's counsel "encourage[d] the Court to adopt the more progressive view" set forth by the United States Supreme Court in *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009), "with regards to the ratio that should be used when determining the weight of drugs," which would result in a Guidelines range of eighty-four (84) to one hundred five (105) months. (Opp., Ex. D (Sentencing Hr'g Tr.), 3, 6-7). Petitioner's counsel acknowledged that without *Spears*, the Guidelines range would be one hundred twenty (120) to one hundred fifty (150) months. (*Id.* at 6). Upon consideration of "everything that's been presented [at the hearing][4] and *Spears* as well as the government's position," the Court sentenced petitioner to one hundred five (105) months custody plus four (4) years of supervised release." (*Id.* at 10-11).

Petitioner did not file an appeal with the United States Court of Appeals for the Second Circuit ("Second Circuit"). On September 13, 2011, petitioner filed the instant Petition, alleging ineffective assistance of counsel based on: (1) counsel's failure to argue against an "affirmative illegal search and seizure of [petitioner's] residence"; (2) counsel's failure to raise "arguments favorable to consideration of a non-Guidelines sentence or the Spears argument of the 20-to1 [sic] ratio disparity"; and (3) counsel's "refus[al] to file an appeal when asked to do so by the

---

[4] Specifically, the Court considered, *inter alia*, that petitioner had "shown absolutely no sign of thinking about anything when he gets out or anything beyond his immediate release," petitioner's "very significant criminal history," and that petitioner "was picked up on this when he had other cases pending." (*Id.* at 7).

4

[petitioner]." (Pet., 5-8). On April 9, 2012, the government opposed the Petition. (Opp. [Docket Entry No. 5]).

II. Discussion

A. Enforceability of the 2255 Waiver

"In general, a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed guideline range is enforceable." *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) (collecting Second Circuit cases). So, too, is a knowing and voluntary waiver of the right to litigate pursuant to Section 2255. *See Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement.") (citation omitted). However, this "waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced, here, the plea agreement." *Id.* An "appeal waiver would be unenforceable" if the petitioner has a "meritorious" "claim that the waiver was the result of ineffective assistance of counsel." *United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004); *see also Marulanda v. United States*, No. 07 CV 5301, 2009 WL 1546315, at *2 (E.D.N.Y. June 2, 2009) ("One such exception [to the enforceability of section 2255 waivers] is a claim that ineffective assistance of counsel caused the defendant to accept the plea agreement containing the waiver.").

To establish that ineffective assistance of counsel, petitioner must show (1) that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary because

5

the advice he received from counsel was not within acceptable standards." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).

Pursuant to the 2255 Waiver in his Plea Agreement with the government, petitioner expressly waived his right to challenge his conviction or sentence by filing a 2255 petition, in the event that the Court imposed a term of imprisonment of one hundred eighty-eight (188) months or below (the "2255 Waiver"). (Plea Agreement, at 3). Petitioner now challenges the validity of the Plea Agreement, alleging that he "was coerced and induced by Counsel to accept the plea based on the Fair Sentencing Act being on the horizon and that he would put off my sentencing until November to ensure the law would apply to me and that [petitioner] did not have a viable defense against the charges and pleading now would be in [his] best interest." (Pet., at 5). To support this argument, petitioner contends that his counsel advanced the sentencing from November 2010 to a date before the Fair Sentencing Act ("FSA") became effective, without first consulting petitioner, which caused petitioner to receive a much harsher sentence.[5] (*Id.* at 6-7). Yet, the record of petitioner's criminal proceeding lacks any indication that his sentencing was originally scheduled for November 2010, and instead, reveals that petitioner was initially scheduled to be sentenced on July 15, 2010, but the sentencing was adjourned to July 26, 2010 upon request of petitioner's counsel. (*United States v. Roberts*, 09-cr-439, ECF No. 28). Furthermore, petitioner does not contend that he would not have entered into the Plea Agreement had he known that he would be sentenced before the FSA became effective.[6] Accordingly,

---

[5] As indicated in the Plea Agreement, the Guidelines range in effect at the time of petitioner's sentencing was one hundred twenty (120) to one hundred fifty (150) months. If calculated after the FSA became effective, the Guidelines range may have been reduced to eighty-four (84) to one hundred five (105) months. *See United States v. Roberts*, No. 09-CR-439 (SJF), 2012 WL 2458153, at *5 (E.D.N.Y. June 25, 2012) (order denying motion for reduction of sentence in light of amended guidelines of FSA).

[6] Indeed, in light of the weight of evidence against him, it is unlikely that petitioner would have rejected the Plea Agreement, thereby opting to proceed to trial and risking the maximum sentence of forty

6

petitioner provides no basis to conclude that the Plea Agreement, and the 2255 Waiver contained therein, were not made knowingly or voluntarily.

Furthermore, petitioner cannot establish that counsel's advice to accept the plea was objectively unreasonable. "In assessing [an] attorney's performance, the reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). At the time petitioner entered into the Plea Agreement, the law in the Second Circuit was that the FSA did not apply to defendants sentenced after August 3, 2010 for conduct committed before that date. *See United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011), *abrogated by Dorsey v. United States*, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012). Therefore, it was reasonable for counsel to assume that petitioner would not benefit from the more lenient guidelines of the FSA, no matter when petitioner was sentenced, because his conduct occurred before August 3, 2010.

Although the Supreme Court's subsequent decision in *Dorsey* changed the law, making the FSA's reduced disparity in penalties for powder cocaine and crack cocaine from 100-to-1 to 18-to-1 applicable to defendants being sentenced after the FSA became effective for conduct that occurred prior to that date, 132 S.Ct. 2121, 183 L.Ed.2d 250 (2012), "[c]ounsel is not required to forecast changes in the governing law." *Mayo*, 13 F.3d at 533. While it may be that petitioner received a harsher sentence than he would have if he had been sentenced after August 3, 2010, that fact does not render counsel's advice that petitioner accept the plea objectively unreasonable. Notably, petitioner does not argue that there was "a viable defense against the

---

(40) years (four hundred eighty (480) months), solely because he was uncertain that he would be sentenced within the FSA Guidelines range of eighty-four (84) to one hundred five (105) months instead of the then-existing range of one hundred twenty (120) to one hundred fifty (150) months.

7

charges" of which counsel should have been aware or neglected to advise plaintiff. (Pet., at 5). Because petitioner cannot show that counsel's advice during the plea process was defective, he has failed to establish ineffective assistance of counsel. Therefore, the 2255 Waiver provision of the Plea Agreement is enforceable and the instant Petition is barred, except insofar as it alleges ineffective assistance of counsel for failing to file an appeal. *See Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009) ("With the exception of Petitioner's claim that he received ineffective assistance of counsel because his attorney failed to file a direct appeal, Petitioner's [remaining ineffective assistance of counsel] claims have been waived."); *Marulanda*, 2009 WL 1546315, at *3 (noting that an exception to the enforceability of 2255 waivers is "a claim that ineffective assistance of counsel caused defendant to accept the plea agreement containing the waiver," but "with respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g. sentencing), however, the waiver remains enforceable"). Accordingly, petitioner's claims that counsel was ineffective for failing to argue that the search was illegal and for failing to argue the sentence disparity pursuant to *Spears* are dismissed.[7]

---

[7] Because this Court concludes that these two (2) ineffective assistance of counsel claims are barred by the Section 2255 Waiver, it need not address the government's arguments that they are procedurally barred because petitioner did not raise them on direct appeal. The Court notes, however, that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United* States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

Furthermore, the Court also notes that these claims fail on the merits. The record reflects that petitioner's trial counsel did "encourage the Court to adopt the more progressive view" set forth by the Supreme Court in *Spears* (Sentencing Hr'g Tr., at 7), and that upon reviewing the discovery, including the search warrant, with counsel, "the determination was made to timely plead guilty and not to challenge the warrant for tactical reasons." (Opp., Ex. E (Didio Aff.), ¶ 5).

8

B. Ineffective Assistance of Counsel for Failure to File an Appeal

Petitioner alleges that his counsel was ineffective for failing to file an appeal, despite being instructed to do so.[8] It is undisputed that "an attorney who fails to file a notice of appeal requested by his client is constitutionally ineffective when the client waived appeal in his plea agreement." *Campusano v. United States*, 442 F.3d 770, 771-72 (2d Cir. 2006). "When counsel fails to do so," prejudice is "presume[d]" and "the defendant will be entitled to a direct appeal without any showing on collateral review that his appeal will likely have merit." *Id.* at 772 (internal citation omitted).

Petitioner requests that this Court "order an evidentiary hearing to be held to hear and expand the record to establish facts outside the record of counsel's ineffective assistance of counsel for failure to file an appeal." (Pet., at 13). However, although the district court is required to hold "a hearing pursuant to § 2255 to determine whether the client requested the appeal," *Campusano* specifically recognized that "the district court has discretion to determine if a testimonial hearing will be conducted." *Id.* at 776. "The district court is permitted to expand the record to include affidavits or other written submissions in order to decide disputed facts." *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 254 (E.D.N.Y. 2009) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

The government has submitted an affidavit from Robert Didio, petitioner's trial counsel, which states that "Darren Roberts also never asked or directed me to file an appeal on his behalf." (Didio Aff., ¶ 6). "When an attorney's affidavit credibly contradicts a habeas

---

[8] Specifically, defendant alleges that: "The defendant and counsel had a very heated discussion right after the defendant's sentencing about how counsel handled this case and his failure to consult with the defendant before changing his sentencing date which led to the defendant getting a much higher sentence than anticipated as was discussed beforehand and how counsel made select defense decisions without consulting the defendant and that defendant wanted him to appeal the case and counsel wanted more money and refused to file the appeal." (Pet., at 8).

9

petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing." *Berrios v. United States*, No. 07-CV-4441, 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) (citing *Chang*, 250 F.3d at 86). Petitioner has not responded to the government's Opposition or otherwise addressed Didio's sworn statement. *See Shef v. United States*, No. 06 Civ. 2091, 2007 WL 812104, at *5 (E.D.N.Y. Mar. 14, 2007) (dismissing ineffective assistance of counsel claim where petitioner's unsworn assertion that he directed counsel to file a notice of appeal was insufficient to merit a hearing in light of counsel's affirmation stating he was never asked to file an appeal); *Cruz-Santos v. United States*, No. 09 Civ. 6503, 2010 WL 1372682, at *3 (S.D.N.Y. Mar. 30, 2010) ("Petitioner's failure to put forth any evidence supporting his unsworn allegation, in the face of his attorney's sworn statement that no request was made, supports a finding that Petitioner made no such request from counsel."); *Colon v. United States*, No. 07 Civ. 2172, 2010 WL 1644260, at *5-6 (S.D.N.Y. Apr. 21, 2010) (dismissing ineffective assistance of counsel claim where petitioner failed to respond to counsel's sworn statement that petitioner did not request an appeal be filed).

Furthermore, the Court considers the extreme unlikelihood that petitioner, who faced a maximum sentence of forty (40) years (four hundred eighty (480) months) and the then-existing Guidelines range of one hundred twenty (120) to one hundred fifty (150) months, would wish to appeal his conviction that resulted in a one hundred five (105) month sentence. *See Davila-Bajana v. United States*, No. 01 CV 7329, 2002 WL 2022646, at *4 (E.D.N.Y. June 26, 2002) (concluding no hearing was necessary on petitioner's ineffective assistance claim given "the extreme unlikelihood that a defendant would wish to appeal a conviction that reduced a 151-188 month sentence to 60 months").

Additionally, while petitioner contends that he requested that his trial counsel file an appeal at the conclusion of the sentencing hearing on July 26, 2010, petitioner did not raise this issue until he filed the instant Petition more than thirteen (13) months later on September 13, 2011. "This delay undermines [petitioner's] claim that he asked his counsel to file a notice of appeal and his counsel refused." *Colon*, 2010 WL 1644260, at *6 (dismissing ineffective assistance claim without a hearing where petitioner waited eleven (11) months after sentencing to file petition); *see also Cruz-Santos*, 2010 WL 1372682, at *3 ("Petitioner's claim that he requested his attorney file an appeal is further undermined by his eight month delay in raising the issue of his appeal."); *Nicholson v. United States*, 566 F. Supp. 2d 300, 305 (S.D.N.Y. 2008) ("[T]o wait eight months to complain for the first time – in a § 2255 petition – that counsel had failed to file a notice of appeal, is more consistent with a fair inference that no request for such appeal was ever communicated to counsel."). Upon exercising its discretion, the Court concludes that no testimonial hearing is necessary. Petitioner's ineffective assistance of counsel claim for failure to file an appeal is rejected as without merit.

III.   Conclusion

For the foregoing reasons, petitioner's Petition for a writ of habeas corpus to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). Petitioner has a right to seek a certificate of appealability from the Second Circuit. *See* 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment in favor of respondent, close this case, and serve notice of entry of this order on all parties in accordance with Federal Rule of Civil Procedure 77(d)(1), including mailing a copy of the order to petitioner at his last known address.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: August 22, 2014
Central Islip, New York